# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LAVERNE SHYNELL FAYSON,      )
                                   )
        Plaintiff,          )
                                   )
      v.                )      Civil Action No. 20-1168-SRF
                                   )
KILOLO KIJAKAZI,[1]           )
Acting Commissioner of Social Security,   )
                                   )
        Defendant.     )
                                   )

## MEMORANDUM OPINION[2]

Plaintiff Laverne Shynell Fayson ("Fayson") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on September 1, 2020, against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (D.I. 2) Fayson seeks judicial review of the Commissioner's August 21, 2019 final decision denying Fayson's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Currently before the court are cross-motions for summary judgment filed by Fayson and the Commissioner.[3] (D.I. 17; D.I. 20) For the reasons set forth below, Fayson's motion for summary judgment (D.I. 17) IS DENIED and the Commissioner's cross-motion for summary judgment (D.I. 20) is GRANTED.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.

[2] The parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, and the case was assigned to the undersigned judicial officer on March 26, 2021. (D.I. 16)

[3] The briefing for the present motions is as follows: Fayson's opening brief (D.I. 18), the Commissioner's combined opening brief in support of the motion for summary judgment and answering brief in opposition to Fayson's motion (D.I. 21). On July 12, 2021, Fayson filed a notice indicating her intention to rest on her opening brief. (D.I. 22)

## I.      BACKGROUND

### A. Procedural History

Fayson protectively filed an application for SSI in December 2016, alleging a disability onset date of December 1, 2016, due to bipolar disorder, depression, anxiety, hepatitis C, and high blood pressure. (D.I. 13-6 at 2-6)  Fayson's claims were denied initially in March 2017 and upon reconsideration in March 2018. (D.I. 13-4 at 2-6, 19-24)  At Fayson's request, an administrative law judge ("ALJ") held a hearing on July 29, 2019. (D.I. 13-2 at 37-83; D.I. 13-4 at 25-30)  The ALJ issued an unfavorable decision on August 21, 2019, finding that Fayson was capable of a full range of work at all exertional levels, but with several nonexertional limitations: "[t]he claimant can perform simple, routine, and repetitive tasks, not at a production pace, involving simple, work-related decisions and few changes in a routine work setting. The claimant can have frequent interaction with supervisors and coworkers, perform occasional tandem work, and have occasional interaction with the public. The claimant can work in a low stress environment, which is defined as an environment in which she is not required to work with alcohol, prescription, or illicit drugs." (D.I. 13-2 at 11-25)  The Appeals Council subsequently denied Fayson's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2-4)

Fayson brought this civil action challenging the ALJ's decision on September 1, 2020. (D.I. 2)  Fayson filed her motion for summary judgment on April 8, 2021 (D.I. 17), and the Commissioner filed a cross-motion on July 8, 2021 (D.I. 20).  Briefing is now complete on the pending motions.

### B.  Medical History

#### 1.  Medical Evidence

Fayson was 44 years old on her alleged disability onset date.  (D.I. 13-2 at 24)  Fayson has an eighth-grade education and earned her GED in 1996.  (*Id.* at 42, 57)  The ALJ found that Fayson has no past relevant work under 20 C.F.R. § 416.965.  (*Id.* at 24)  The ALJ found that Fayson has the following severe impairments: bipolar disorder, panic disorder, depression, alcohol use disorder, and polysubstance abuse.[4]  (*Id.* at 16)  The focus of Fayson's motion for summary judgment is whether substantial evidence supports the ALJ's decision giving no weight to the opinions of Fayson's treating providers that she has severe or moderately severe limitations from her mental impairments.  (D.I. 18 at 11-19)

The record reflects that Fayson has a long history of significant mental health issues, including prior suicide attempts, with a prior finding of disability and eligibility for SSI in 2005.  (D.I. 13-2 at 20, 45-47)  Fayson testified that her SSI benefits were discontinued because she accidentally signed a form that ended her benefits, while the ALJ asserts that Fayson's benefits were discontinued due to treatment noncompliance and improved condition.  (*Id.*)

Since October of 2014, Fayson treated with Patricia Lifrak, M.D., her psychiatrist, intermittently for management of depression and anxiety.  (D.I. 13-7 at 239-249)  In November of 2016, shortly before the date of her application, Fayson presented to Dr. Lifrak and generally reported feeling depressed and anxious with difficulty sleeping.  (*Id.* at 248-249)  Dr. Lifrak

---

[4] The ALJ noted that Fayson applied for SSI due to a hepatitis C and high blood pressure, in addition to bipolar disorder, depression, and anxiety, however Fayson did not offer testimony concerning these impairments at the hearing and maintained that her mental impairments affect her functional capabilities more so than anything else.  (D.I. 13-2 at 16-17)

diagnosed Fayson with severe major depressive disorder with psychotic symptoms and anxiety disorder, prescribed Fayson several medications, and recommended outpatient therapy. (*Id.*)

Following her December 2016 SSI filing date, Fayson did not present for further mental health treatment until May 9, 2017, when she attended an eight-day partial hospitalization program at Rockford Center for mental health issues and substance abuse following a relapse. (D.I. 13-8 at 470-473) Her diagnoses upon admission were bipolar disorder and alcohol and cocaine use disorder described as moderate. (*Id.* at 471-472) At that time, Fayson reported that she was not taking any medications. (*Id.* at 472) Fayson was administratively discharged from Rockford Center due to nonattendance. (*Id.*) Fayson had the same diagnoses on discharge and was found to have a guarded prognosis. (*Id.* at 470-473) The healthcare providers at Rockford Center prescribed Fayson medication and advised her to continue with outpatient mental health treatment. (*Id.*)

After an absence from treatment since November of 2016, Fayson resumed routine psychiatric visits with Dr. Lifrak for the first six months of 2018, during which Fayson generally reported feeling irritable and anxious with low motivation and energy at times. (*Id.* at 206-210) On mental status examinations, Dr. Lifrak noted that Fayson was irritable and anxious and exhibited a tearful affect at times, but had good judgment, insight, and impulse control, with no suicidal or homicidal ideas, intent, or plans, and no evidence of agitation, manic, or out of control behavior. (*Id.*) Dr. Lifrak continually altered Fayson's medication regimen and dosage throughout that period. (*Id.*)

In May of 2018, Fayson began outpatient treatment at Mid-Atlantic Behavioral Health, which involved therapy and medication management. (D.I. 13-8 at 167-179, 369-463) On May 22, 2018, Fayson was evaluated by Daniel Weintraub, Ph.D. at Mid-Atlantic Behavioral Health.

(*Id.* at 369-372)  Fayson appeared well groomed, alert, and attentive, exhibited a depressed mood, blunted affect, fair judgment concerning everyday activities and social situations, and normal speech and thought processes.  (*Id.*)  Dr. Weintraub diagnosed Fayson with bipolar disorder and panic disorder without agoraphobia.  (*Id.*)

On October 20, 2018, Julie Keaveney, Psy.D., Fayson's treating psychologist, completed a series of psychological tests which included a Personality Assessment Inventory, Rorschach Inkblot Test, Thematic Apperception Test, and Trauma Symptom Inventory.[5]  (*Id.* at 167-174) Dr. Keaveney found, based on the testing and clinical interview, that Fayson had a substantially elevated depressive index, an elevated anxiety index, and a panic disorder.  (*Id.* at 175-176) Fayson's symptoms included nightmares caused by trauma, flashbacks, hypervigilance, detachment, and sleep disturbance.  (*Id.*)  Dr. Keaveney recommended treatment including psychotherapy, trauma focused therapy, exercise, medication management, behavioral activation, and bipolar disorder education.  (*Id.*)

From June of 2018, Fayson remained under the care of multiple providers at Mid-Atlantic Behavioral Health for therapy and medication management.  (*Id.* at 373-463)  She treated with Kristen David, a psychiatric mental health nurse practitioner ("NP"), Therapists Jennie Lowe, MSW and Lisa Darby, LCSW, and Dr. Keaveney.  (*Id.*)  Through early December of 2018, Fayson was routinely observed to be alert, oriented, well groomed, and healthy, with normal to fair judgment and insight, normal memory, normal capacity for sustained mental activity and

---

[5] A Personality Assessment Inventory is used to assess psychological functioning and "provides a number of validity indices that are designed to provide an assessment of factors that could distort the results of testing." (D.I. 13-8 at 170)  The Rorschach Inkblot Test is a projective test used to assess psychological functioning. (*Id.* at 171)  A Thematic Apperception Test is used as a projective measure of personality. (*Id.* at 173)  Finally, a Trauma Symptom Inventory is used to assess for the presence and severity of symptoms related to trauma. (*Id.*)

abstract thinking, and normal thought processes, but at times had a depressed mood and blunted affect. (*Id.* at 369-404) Fayson was assessed as having a low or no risk of harm to self or others. (*Id.*) Beginning mid-December of 2018, Fayson regularly exhibited a negativistic, tense, gloomy, sad and/or unhappy mood, flat affect, poor judgment concerning everyday activities and social situations, quiet speech, and an uncooperative or guarded attitude when presenting to Therapists Lowe and Darby. (*Id.* at 405-411, 416-427, 432-451, 455-463) Lowe and Darby noted that Fayson had a moderate risk of harm to self or others beginning in February of 2019 after Fayson reported having suicidal thoughts. (*Id.* at 424-427, 432-451, 455-456, 458-463) During that period, Fayson also presented to NP David, who consistently noted that Fayson had low or no risk of harm to self or others, appeared well groomed and healthy, alert and oriented, and exhibited normal mood and affect, intact memory, normal speech, normal judgment concerning everyday activities and social situations, and was cooperative. (*Id.* at 401-404, 412-415, 428-431, 452-454, 457)

### 2. Medical Opinions

#### a. State Agency Psychological Consultants

Fayson attended a consultative psychological examination with licensed psychologist Brian Simon, Psy.D.[6] on March 13, 2017. (D.I. 13-7 at 322-328) The state agency examination occurred approximately three months after Fayson applied for benefits and, at the time, she was not participating in regularly scheduled mental health treatment. (*Id.*; D.I. 13-8 at 470-73; D.I. 18 at 7-8; D.I. 21 at 9) Dr. Simon observed that Fayson was well groomed and made intermittent

---

[6] As noted in the Commissioner's brief, the ALJ incorrectly states that Ramnik Singh, M.D. conducted the March 2017 psychological consultative examination, when it was conducted by Brian Simon, Psy.D. (D.I. 21 at 8 n.2; D.I. 13-2 at 20-21; D.I. 13-7 at 322-330) The exhibit description for Exhibit No. 12F also incorrectly recites "CE Psychology, dated 03/13/2017, from SINGH, RAMNIK MD." (D.I. 13-7 at 1)

eye contact, had fair attention and concentration, good immediate and short-term memory, coherent and goal directed speech, adequate abstraction ability, fair insight and judgment, and no suicidal or homicidal ideations, but her affect was constricted, her mood was slightly dysthymic, and she appeared a bit anxious. (D.I. 13-7 at 326-327) He observed that Fayson "is capable of interacting appropriately with others" and "has not encountered any significant difficulties being able to get along with others at home, school, or at work in the past, but she is not comfortable in crowded situations." (*Id.* at 327) Further, Dr. Simon opined that Fayson appeared capable of understanding, following, and carrying out instructions, making decisions, exercising judgment, insight, and common sense at work, performing simple tasks, and avoiding hazards at work. (*Id.*) He noted that Fayson may encounter problems adapting to different circumstances and being able to persist for a normal work period due to her psychiatric problems. (*Id.*)

Dr. Simon diagnosed Fayson with bipolar I disorder, most recent episode depressed, panic disorder, and agoraphobia. (*Id.*) He estimated that Fayson had moderately severe impairments in her ability to sustain work performance and attendance in a normal work setting and cope with pressures of ordinary work, moderate impairments in carrying out instructions, performing routine, repetitive tasks under ordinary supervision, relating to other people, and performing daily activities, and mild impairments in understanding simple, primarily oral instructions. (*Id.* at 322-323)

A records review was performed by state agency psychological consultant, Christopher King, Psy.D. on March 15, 2017. (D.I. 13-3 at 2-14) Dr. King opined that Fayson had no understanding or memory limitations, had fair attention and concentration skills sufficient for simple, repetitive tasks, and was capable of a basic work routine within a solidary environment. (*Id.*) Dr. King found that Fayson had severe impairments of depressive, bipolar and related

7

disorders and anxiety and obsessive-compulsive disorders.  (*Id.* at 9)  Dr. King estimated that Fayson had moderate limitations in her ability to carry out detailed instructions and respond appropriately to criticism from supervisors, interact appropriately with the general public, and maintain attention and concentration for extended periods.  (*Id.* at 11-12)

At the state agency's request, Fayson attended a consultative psychological examination with Ramnik Singh, M.D. on March 1, 2018.  (D.I. 13-8 at 149-156)  Dr. Singh observed that Fayson was well groomed and maintained intermittent eye contact, appeared alert and oriented, but that her affect was constricted.  (*Id.* at 150-151)  Upon examination, Fayson exhibited no abnormalities in her thought process and no current suicidal or homicidal ideation.  (*Id.*)  She had reduced remote memory, but her immediate memory was intact.  (*Id.*)  Dr. Singh diagnosed Fayson with bipolar II disorder and a history of alcohol and cocaine use and gave her a global assessment of functioning ("GAF") score of 65 to 68.[7]  (*Id.*)  Dr. Singh estimated that Fayson had moderate to moderately severe limitations in her ability to perform complex tasks and work in an environment requiring frequent contact with others.  (*Id.* at 152)  Dr. Singh estimated that Fayson had moderate limitations in the following abilities: relating to other people, performing daily activities, constriction of interest, comprehending and following instructions, performing work where contact with others will be minimal, and performing simple, repetitive, or varied tasks.  (*Id.* at 152-153)

On March 13, 2018, a records review was performed by state agency psychological

---

[7] "GAF scores are used by 'mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults.'" *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534-535, n.3 (3d Cir. 2011) (quoting *Irizarry v. Barnhart*, 233 F. App'x 189, 190 n. 1 (3d Cir. 2007)). "The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." *Id.* "A GAF score of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.*

consultant, Patricia Miripol, Ph.D. (D.I. 13-3 at 23-30)  She opined that Fayson is able to

understand, remember, and carry out simple instructions and tasks and "appears capable of

simple/routine work with limited social interaction/public contact demands."  (*Id.* at 28)

### b.  Plaintiff's Treating Providers

On December 7, 2018, Dr. Keaveney completed a Psychological Functional Capacity

Evaluation. (D.I. 13-8 at 339-341)  Dr. Keaveney opined that Fayson's mental illness is severe

and debilitating and interferes with her sleep, concentration, and energy. (*Id.* at 339)  Dr.

Keaveney opined that Fayson is not able to reliably attend work 40 hours per week and does not

have the ability to remain on task at least 80% of the workday due to her depression and PTSD

interfering with her concentration and memory. (*Id.*)  According to Dr. Keaveney, Fayson had

severe impairments in her ability to cope with pressures of ordinary work and moderately severe

limitations in her ability to perform activities of daily living, relate to other people, carry out

instructions under ordinary supervision, sustain work performance and attendance in a normal

work setting, and perform routine, repetitive tasks under ordinary supervision. (*Id.* at 340-341)

Therapists Lowe and Darby completed a joint Psychological Functional Capacity

Evaluation on April 5, 2019, opining that Fayson does not have the ability to work full-time due

to her depression related to her bipolar disorder causing paranoia, in which she believes others

will hurt her or are plotting against her. (*Id.* at 290-292)  Lowe and Darby also opined that

Fayson's hypervigilance and racing thoughts inhibit her ability to focus on even short, simple

processes to complete a task. (*Id.* at 290)  According to Lowe and Darby, Fayson had severe

limitations in her ability to relate to other people, perform daily activities, carry out instructions

under ordinary supervision, sustain work performance and attendance in a normal work setting,

cope with pressures of ordinary work, and perform routine, repetitive tasks under ordinary

9

supervision, and moderately severe limitations in understanding simple, primarily oral instructions. (*Id.* at 291-292)

On May 10, 2019, NP David completed a Psychological Functional Capacity Evaluation, opining that Fayson does not have the ability to perform simple, repetitive work 40 hours per week without missing more than two days per month and that Fayson's anxiety and mood symptoms prevent her from being able to concentrate and complete work-related tasks. (*Id.* at 293) NP David opined that Fayson had moderately severe limitations in her ability to understand simple, primarily oral instructions, carry out instructions under ordinary supervision, sustain work performance and attendance in a normal work setting, cope with pressures of ordinary work, and perform routine, repetitive tasks under ordinary supervision. (*Id.* at 294-295)

Fayson's primary care physician, Molly Sandrian, D.O., completed a Psychological Functional Capacity Evaluation on July 7, 2019, opining that Fayson does not have the ability to work full-time because she is unable to get out of bed most days, barely prepares her own meals, and bathing and self-hygiene, such as brushing teeth, occurs only twice per week. (*Id.* at 474-480; D.I. 18 at 6) Dr. Sandrian opined that Fayson does not have the ability to remain on task at least 80% of the work day due to poor short-term memory, including forgetting what she is saying mid-sentence and difficulty maintaining focus. (D.I. 13-8 at 474) According to Dr. Sandrian, Fayson had severe limitations in her ability to sustain work performance and attendance in a normal work setting, cope with pressures of ordinary work, and perform daily activities, moderately severe limitations in carrying out instructions under ordinary supervision and performing routine, repetitive tasks under ordinary supervision, and mild limitations in her ability to relate to other people and understand simple, primarily oral, instructions. (*Id.* at 475-476)

## C. Hearing Before the ALJ

### 1. Fayson's Testimony

At the administrative hearing on July 29, 2019, Fayson testified that she has an eighth-grade education and received her GED in 1996. (D.I. 13-2 at 42, 57)  She testified that her most recent employment was in 2017, when she worked for temporary agencies doing various jobs, including a job as a flagger and a job working in a warehouse. (*Id.* at 42-43)  Fayson explained that she experiences anxiety and panic attacks while in large crowds, taking public transportation, and working, in which she hears voices and thinks people are talking about her or are out to get her. (*Id.* at 52-53, 55-56)  She testified that she has difficulty concentrating and hears voices once a week to once a month depending on when she takes her medication. (*Id.* at 56)

Fayson testified that she lives with her teenage children in a two-story townhouse. (D.I. 13-2 at 44-45)  Her children and her friend[8] assist with household chores, including doing laundry. (*Id.* at 45, 54, 56-57)  She testified that she spends most of her time in her second-floor bedroom in the dark, either laying down or watching television. (*Id.* at 44, 53)  According to Fayson, she is not able to attend her children's school events, requires assistance grocery shopping, and eats by herself in her bedroom because she does not want to be downstairs. (*Id.* at 53-54)  Fayson explained that she has never had a driver's license and is afraid to drive because she fears she may hurt herself or others or may have paranoia or a panic attack while driving.

---

[8] Fayson's friend also testified at the administrative hearing, and his observations were consistent with Fayson's testimony. (D.I. 13-2 at 60-68)  He testified that Fayson's mood fluctuates, she spends most of her time in her bedroom, and she requires assistance grocery shopping, keeping appointments, and maintaining her home due to her anxiety and panic attacks. (*Id.* at 61-63, 65-66)  He indicated that Fayson is significantly limited by her impairments, but he felt she could perform some small, menial tasks. (*Id.* at 67)  Thus, the ALJ gave "some weight" to his testimony. (*Id.* at 20)

(*Id.* at 45) Her friend drives her to her doctor's appointments and to church occasionally. (*Id.* at 48, 51) She explained that she often leaves church when it is very crowded because she experiences panic attacks. (*Id.* at 48-49) In response to the ALJ's questioning, Fayson stated that she has been sober since March 2017. (*Id.* at 47-48, 58)

Fayson testified that she complained to Dr. Lifrak that she heard voices and was prescribed medication. (*Id.* at 49-50) The medication helped her symptoms, but made her drowsy. (*Id.*) She testified that she has been seeing Therapist Lowe every two weeks for approximately the past year and was prescribed medication from NP David. (*Id.* at 50-51) She indicated that she found her sessions with Lowe helpful. (*Id.* at 52)

### 2. Vocational Expert Testimony Before the ALJ

At the administrative hearing on July 29, 2019, the ALJ posed the following hypothetical to the vocational expert ("the VE"):

> For any hypothetical you hear today, please assume an individual of the Claimant's age, education, and experience. If such individual is able to perform only simple, routine, repetitive tasks, and not at a production pace; if the individual is able to make only simple work-related decisions, tolerate few changes in a routine work setting; if the individual is able to interact with supervisors and coworkers only frequently, and only occasionally work in tandem with others, and only occasionally interact with the public; if the individual must work in a low stress environment, and I'm defining that as an environment in which the individual is not required to work with alcohol or prescription drugs or illicit drugs, are there any jobs in the national economy that such an individual could perform?

(D.I. 13-2 at 70) In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual could work in unskilled occupations as a table worker of leather products, an inserter of paper goods, or a garment bagger. (*Id.* at 25, 70-71) In response to the ALJ's question, the VE confirmed that work would still be available in these unskilled positions if the hypothetical individual was only occasionally able to interact with supervisors, coworkers, and the public.

(*Id*. at 75)

In response to questioning by Fayson's counsel, the VE testified that the absentee tolerance for these jobs is one day per month. (*Id*. at 71)  The VE also testified that a hypothetical individual who would be off-task part of the day would not be able to participate in competitive employment. (*Id*.)  Likewise, the VE testified that competitive employment would be precluded if production was reduced by 20% or more because of the hypothetical individual's limitations. *(Id*. at 74-75)

### D. The ALJ's Findings

Based on the medical evidence in the record and the testimony by Fayson, her friend, and the VE, the ALJ determined that Fayson was not disabled under the Act for the relevant time period from the December 1, 2016 disability onset date through the July 29, 2019 hearing date. (D.I. 13-2 at 14-25)  The ALJ found, in pertinent part:

1. The claimant has not engaged in substantial gainful activity since December 1, 2016, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder, panic disorder, depression, alcohol use disorder, and polysubstance abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. …[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine, and repetitive tasks, not at a production pace, involving simple, work-related decisions and few changes in a routine work setting. The claimant can have frequent interaction with supervisors and coworkers, perform occasional tandem work, and have occasional interaction with the public. The claimant can work in a low stress environment, which is defined as an environment in which she is not required to work with alcohol, prescription, or illicit drugs.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was…defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 1, 2016, the date the application was filed (20 CFR 416.920(g)).

(*Id.* at 16-25)

## II.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

14

## III.    DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program.  42 U.S.C. § 1382(a).  A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy.  *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled.  *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).  If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further.  20 C.F.R. § 416.920(a)(4).  At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity.  *See id.* at § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments.  *See id.* at § 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work.  *See id.* at § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428.  When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled.  *See* 20 C.F.R. § 416.920(a)(4)(iii).  If a claimant's impairment, either singly or in combination, fails

15

to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §
416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional
capacity ("RFC") to perform past relevant work. *See id.* at § 416.920(a)(4)(iv); *Plummer*, 186
F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak
v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (internal quotations and alterations omitted). The
claimant bears the burden of demonstrating the inability to return to past relevant work. *See
Plummer*, 186 F.3d at 428

If the claimant is unable to return to past relevant work, at step five, the Commissioner
must demonstrate that the claimant's impairments do not preclude an adjustment to any other
available work. *See* 20 C.F.R. § 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the
Commissioner must prove that "there are other jobs existing in significant numbers in the
national economy which the claimant can perform, consistent with her medical impairments, age,
education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must
analyze the cumulative effect of all the claimant's impairments in determining whether he or she
is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's
assistance in making this finding. *See id.*

### B. Whether the Plaintiff Has Greater Mental Health Restrictions Than Those Included in the RFC Finding

Fayson argues that the ALJ improperly evaluated the medical opinion evidence and, thus,
the VE's testimony was based on a defective RFC insufficient to support the ALJ's denial of
benefits. (D.I. 18 at 12-14) Fayson contends that the only remedy to correct an inaccurate RFC
is remand. (*Id.* at 14) Specifically, Fayson argues that (1) the opinions of Dr. Keaveney, Dr.
Sandrian, NP David, and Therapists Lowe and Darby each establish greater limitations than

16

those in the RFC; (2) the ALJ did not provide legally sufficient reasons to give "no weight" to these opinions and failed to consider their internal consistency and their treating source or specialist status pursuant to 20 C.F.R. § 416.927(c); (3) the ALJ improperly discounted Dr. Simon's opinion because Fayson was not undergoing formal mental health treatment at the time; and (4) the ALJ improperly relied on the opinions of state agency psychological consultants. (*Id.* at 11-19)

The ALJ rejected all five opinions for the same general reason, that they were inconsistent with "[t]he totality of the claimant's mental health treatment records," including the overall stable and benign findings on mental status examinations during the period surrounding the opinions and Fayson's self-reported daily activities and abilities.[9] (D.I. 13-2 at 19-23) The ALJ cited throughout the decision to three exhibits, 21F, 23F and 33F,[10] and found that the exhibits supported stable and benign mental status examinations. (*Id.* at 22-23) According to the Commissioner, the ALJ had no duty to recite each treating source factor in the written decision,

---

[9] The ALJ noted that Fayson reported no problems with personal care, taking medications, preparing simple meals, handling finances, sleeping, attending church with her family, getting along with authority figures, and handling changes in routine. (D.I. 13-2 at 23; D.I. 13-6 at 28-34; D.I. 13-7 at 327)

[10] Exhibit 21F details Dr. Keaveney's November 2018 Psychological Evaluation Report, finding that Fayson appeared well groomed, alert, oriented, with adequate concentration, logical thought process, fair insight and judgment, and no suicidal thoughts, but had a depressed mood and blunted affect. (D.I. 13-8 at 167-177) Exhibit 23F details 2018 treatment records from Dr. Lifrak, in which she found that Fayson's mood fluctuated from irritable and anxious to depressed, her affect fluctuated from tearful to full range, and that Fayson denied suicidal or homicidal thoughts, had good judgment, insight, and impulse control, with no evidence of agitation, manic, or out of control behavior. (*Id.* at 206-210) Exhibit 33F details Fayson's May 2018 to May 2019 treatment records from her treating providers at Mid-Atlantic Behavioral Health and, as discussed, *infra*, Fayson regularly exhibited a negativistic, tense, gloomy, sad and/or unhappy mood, flat affect, poor judgment concerning everyday activities and social situations, quiet speech, and an uncooperative or guarded attitude when presenting to Therapists Lowe and Darby, but overall stable and benign findings when presenting to NP David. (*Id.* at 375-463)

17

had no duty to consider that the discounted opinions were consistent with each other as they were neither well-supported nor consistent with the record as a whole, and the ALJ properly evaluated all opinions in the context of the entire medical record. (D.I. 21 at 11-16)

Because of its filing date, Fayson's claim falls within the "treating source doctrine," which requires a treating source's opinion to be given controlling or substantial weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[11] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *see also* 20 C.F.R. § 416.927(c)(2). Although the findings and opinions of treating physicians are entitled to substantial weight, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Instead, the determination of RFC and disabilities are issues reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d).

Moreover, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with other substantial evidence in [the] case record.'" *See Scouten v. Comm'r of Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927(c)(2). If an ALJ chooses to reject the treating source's assessment, they may do so only on the "basis of contradictory medical evidence" not because of his or her "own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer*,

---

[11] 20 C.F.R. § 416.927 was superseded by 20 C.F.R. § 416.920c for claims filed on or after March 27, 2017. Because Fayson's claim was filed prior to this date, 20 C.F.R. § 416.927 remains in effect. *See Kochaba v. Kijakazi*, C.A. No. 20-367-SRF, 2021 WL 4502035, at *8 n.5 (D. Del. Oct. 1, 2021).

186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)). An ALJ need not discuss every regulatory factor so long as the ALJ provides "good reasons" for the weight assigned to the treating source's opinion. *See* SSR 96-2p, 1996 WL 374188, at *5 ("the adjudicator will always give good reasons…for the weight given to a treating source's medical opinion"); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that there is no requirement for "the ALJ to use particular language or adhere to a particular format in conducting his analysis," but there must be "sufficient development of the record and explanation of findings to permit meaningful review").

In the case at bar, the ALJ found that Fayson had moderate limitations in understanding, remembering, or applying information, interacting with others, and in her ability to concentrate, persist, maintain pace, and adapt or manage herself. (D.I. 13-2 at 17-18) The ALJ found that the opinions suggesting severe or moderately severe work-related limitations were neither well-supported nor consistent with Fayson's treatment records and self-reported activities of daily living. (*Id.* at 21-23) The ALJ properly found the opinions were due reduced weight under the regulations, despite their consistency with one another. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is *with the record as a whole*, the more weight we will give to that medical opinion") (emphasis added).

Substantial evidence supports the ALJ's decision to afford the opinions of Dr. Simon, NP David, and Therapists Lowe and Darby limited or no weight. The ALJ gave limited weight to Dr. Simon's opinion that Fayson had moderately severe limitations in sustaining work performance and attendance, in part, because Fayson was not undergoing formal mental health treatment at the time and, thus, no treatment records existed to support the opinion. (D.I. 13-2 at 21) The ALJ observed that following her December 2016 SSI filing date, Fayson did not

19

participate in formal mental health treatment until her partial hospitalization in May 2017 following a relapse. (*Id.* at 20-21; D.I. 21 at 9)  The ALJ explained another basis for assigning limited weight to the opinion by stating that the benign findings on mental status examinations following the opinion, including those indicating Fayson had good memory, did not support this moderately severe limitation. (D.I. 13-2 at 21)  Additionally, Dr. Simon explains in his opinion that Fayson "is capable of interacting appropriately with others, performing simple tasks, and avoiding hazard at work," has no problems maintaining concentration, focus, and attention, and is able to understand, follow, and carry out simple instructions. (D.I. 13-7 at 322-328) Therefore, substantial evidence supports the ALJ's decision to give Dr. Simon's opinion limited weight.

The treatment records of NP David overlap in time with those of Therapists Lowe and Darby, but are inconsistent with one another.  For example, NP David details overall stable and benign findings on mental status examinations, including normal mood and affect, intact memory, normal speech, and normal judgment concerning everyday activities and social situations. (D.I. 13-8 at 375-379, 385-392, 401-404, 412-415, 428-431, 452-454, 457) However, during that same period, Therapists Lowe and Darby detail that Fayson generally exhibited depressed, negativistic, gloomy and tense mood, blunted or flat affect, poor judgment concerning everyday activities and social situations, quiet speech, and marginally cooperative and guarded attitude. (*Id.* at 405-411, 416-427, 432-451, 455-463)  Moreover, NP David's opinion that Fayson had moderately severe work-related limitations is inconsistent with her treatment records from the same day, which detailed overall stable and benign findings, including normal mood and affect, intact memory, and normal judgment and insight. (*Id.* at 293-295, 452-454)

Citing the foregoing treatment records and opinions, the ALJ addressed the limitations expressed in Dr. Simon, NP David, and Therapists Lowe and Darby's opinions. The record contains treatment records inconsistent with opinions provided on the basis of Fayson's course of treatment. The ALJ may afford less weight to these opinions, as they are neither well-supported nor consistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(2)-(4) ; *see also Plummer*, 186 F.3d at 429.

Dr. Keaveney and Dr. Sandrian's opinions are subject to the treating physician doctrine, but are likewise unsupported by the totality of the record establishing overall stable, benign findings on mental status examinations.[12] *See* 20 C.F.R. § 416.927(c)(2)-(4). For example, Dr. Keaveney opined in her December 2018 opinion that Fayson's "mental illness is severe and debilitating, interferes with her sleep, concentration, and energy" and that her "depression and PTSD interferes with her concentration and memory...she is easily distracted and would be unable to reliably stay on task."[13] (D.I. 13-8 at 339-341) However, Dr. Keaveney's October and November 2018 treatment records noted that, despite exhibiting a depressed mood and blunted affect, Fayson's memory seemed intact, she was alert, oriented, and cooperative, with normal judgment concerning everyday activities and social situations, normal insight and speech, and no suicidal or homicidal ideations or hallucinations. (*Id.* at 393-400)

Similarly, Dr. Sandrian opined in July 2019 that Fayson "is unable to get out of bed most days, barely prepares her own meals, bathing and self hygiene...only occurs about 2x a week"

---

[12] Fayson also contends that Drs. Keaveney and Sandrian are "specialists," such that their opinions are due greater weight under 20 C.F.R. § 416.927(c)(5), but does explain why these providers should be considered specialists, and Fayson's brief indicates that Dr. Sandrian is a primary care physician, not a mental health specialist. (D.I. 18 at 6, 15)

[13] The law is well-established that medical source opinions regarding whether a claimant is disabled or unable to work are reserved for the Commissioner and are not given any weight. *See Moore v. Colvin*, 239 F. Supp. 3d 845, 859 (D. Del. 2017).

and that Fayson "reports poor short term memory – forgets what she is saying midsentence, and

has difficulty maintaining focus." (*Id.* at 474-476)  However, Fayson's treatment records

continually reported that she appeared well groomed, and Fayson reported that she has no

difficulty with personal care or preparing simple meals.  (D.I. 13-6 at 28-30; D.I. 13-2 at 65; D.I.

13-7 at 324-328; D.I. 13-8 at 369-463)  Further, Fayson's treatment records during the period

surrounding Dr. Sandrian's opinion show that Fayson exhibited intact and normal immediate,

recent, and remote memory.  (D.I. 13-8 at 432-463)

Citing to exhibits from these treating providers, the ALJ directly addressed the limitations

expressed in Drs. Keaveney and Sandrian's opinions and articulated why she found them to be

inconsistent with the evidence in the record.  Further, there is no requirement that the ALJ

specifically list and discuss each regulatory factor in 20 C.F.R. § 416.927(c).  *See* SSR 96-2p,

1996 WL 374188, at *5; *see also Jones*, 364 F.3d at 505.  The ALJ's assessment of these

opinions allows for meaningful review and is supported by substantial evidence.  *See Scouten*,

722 F. App'x at 290 ("[a] treating source's opinion is not entitled to controlling weight if it is

'inconsistent with other substantial evidence in [the] case record'"); *see also Laurie Sternberg v.

Comm'r of Social Sec.*, 438 Fed. App'x 89, 98 (3d Cir. 2011) ("the ALJ did not act improperly in

affording [treating physician's] opinion 'little or no weight'" where the objective medical

evidence in the record contradicted the opinion); *see also Hoyman v. Colvin*, 606 F. App'x 678,

680-81 (3d Cir. 2015) (holding that the ALJ correctly discounted a treating source's medical

opinion after finding it inconsistent with the physician's own notes and objective evidence in the

record).

Additionally, Fayson argues that the ALJ improperly relied on the consultative opinions

of Drs. Singh, King, and Miripol.  (D.I. 18 at 17-19)  Specifically, Fayson argues that Dr.

Singh's opinion establishes greater limitations than those reflected in the RFC because Dr. Singh indicated that Fayson had moderate to moderately severe limitations in her ability to perform work requiring frequent contact with others and in completing complex tasks. (*Id.* at 17-18) However, the ALJ restricted Fayson, in part, to simple, routine and repetitive tasks, and the VE confirmed that the identified jobs could be performed if the hypothetical individual was further limited to occasional interaction with supervisors and coworkers, rather than frequent interaction. (D.I. 13-2 at 18-19, 75)

Fayson also argues that the ALJ's reliance on the opinions of state agency psychological consultants Drs. King and Miripol was improper because they conducted their reviews before the record was complete, in March 2017 and March 2018, respectively. (D.I. 18 at 18-19) However, these opinions are not due less weight simply because the consultants conducted their reviews at an earlier stage in the administrative process and before the record closed. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (finding that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it"). Moreover, the ALJ, citing to the record, found that the opinions of the state agency psychological consultants were internally consistent and well supported by a reasonable explanation and the available evidence at the time of their determinations. (D.I. 13-2 at 21, 24) Specifically, the ALJ noted that "the mental status examinations throughout the relevant period have consistently been within the claimant's functional limitations, other than depressed and anxious moods, including during periods when she reported she had not been taking her medications." (*Id.* at 24, citing D.I. 13-7 at 239-251, D.I. 13-8 at 167-181, 206-212, 369-463)

23

Finally, to the extent Fayson contends that objective medical evidence may also exist to support the severe or moderately severe work-related limitations described in the discounted opinions, it is not for the court to re-weigh the medical opinions in the record, but rather to "determine whether substantial evidence exists to support the ALJ's weighing of those opinions." *Ransom v. Berryhill*, C.A. No. 17-939-LPS, 2018 WL 3617944, at *7 (D. Del. July 30, 2018) (citing *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008)); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (the court "may not weigh the evidence or substitute [its] conclusions for those of the fact-finder"). Here, substantial evidence exists to support the ALJ's decision. Accordingly, Fayson's motion for summary judgment is denied, and the Commissioner's cross-motion for summary judgment is granted.

## IV.    CONCLUSION

For the foregoing reasons, Fayson's motion for summary judgment (D.I. 17) is DENIED and the Commissioner's cross-motion for summary judgment (D.I. 20) is GRANTED. An Order consistent with this Memorandum Opinion shall issue.

Dated: April 14, 2022

Sherry R. Fallon
United States Magistrate Judge

24